# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBRA M. RADER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: 07-553 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

CONTI, District Judge.

### I.  Introduction

Plaintiff Debra M. Rader ("plaintiff") brought this action for review of the decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her claim for supplemental security income ("SSI") under Title XIV of the Social Security Act, 42 U.S.C. §§ 1381-83.  The parties have submitted cross-motions for summary judgment on the record developed at the administrative proceedings.  After review of the decision of the administrative law judge (the "ALJ"), the submissions of the parties, and the record before the court, the court finds the ALJ's decision is supported by substantial evidence, and therefore will grant defendant's motion for summary judgment, will deny plaintiff's motion for summary judgment and will enter judgment in favor of defendant.

## II. Procedural History

On December 16, 2004, plaintiff applied for SSI, alleging disability beginning December 1, 2004, due to pain in her right foot and leg. (Administrative record ("R") at 26, 62, 65). On March 31, 2005, plaintiff timely requested a hearing after her initial claim was denied. (Id. at 40). The hearing was held before the ALJ on October 16, 2006. (Id. at 198). During the hearing plaintiff, who was represented by an attorney, testified (Id. at 202-15), as did a vocational expert (the "VE"). (Id. at 215-19). The ALJ denied plaintiff's claim on December 26, 2006, finding that although she had severe physical impairments, none of the impairments met or were medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 14).

The ALJ further found that plaintiff retained the residual functional capacity (the "RFC") to perform sedentary work that does not require climbing, kneeling, crawling, balancing, or the use of foot controls.[1] (Id.). Plaintiff was found to be able to perform work that allows for a sit/stand option, which includes the position of a packager, a small machine operator, and office clerk. (Id. at 16). On April 6, 2007, the Appeals Council denied plaintiff's request for review (id. at 4-8) and the ALJ's decision became the final decision of the Commissioner. Plaintiff filed her complaint in this action seeking judicial review of that decision.

## III. Plaintiff's Background and Medical Evidence

Plaintiff was born on September 30, 1957 and was 49 years old at the time of the hearing before the ALJ. (Id. at 15, 202). She graduated from high school and has no other formal

---

[1]Sedentary work requires an ability to stand and/or walk "occasionally," 20 C.F.R. §§ 404.1567(a), 416.967(a), up to two hours per day. See Social Security Ruling 96-9P, 1996 WL 374185, at *3.

education. (Id. at 202). From June 1977 to July 1985, plaintiff worked as a line server in the food service department of Thiel College. (Id. at 66-67). The following year, plaintiff worked as a housekeeper at the Park Inn Motel from August to November 1986. (Id. at 66, 68). From November 2002 to April 2003, her sister and she worked as part of the kitchen staff at the Buckeye Auction. (Id. at 66, 69). This work was performed on a volunteer basis; it was not a paid position. (Id.). Plaintiff stopped working in order to be a homemaker. (Id. at 78). By reason of plaintiff's work being before 1986 (with the exception of the volunteer work she did with her sister at the auction in 2002), the ALJ deemed her as having no past relevant work. (Id. at 15, 203).

Plaintiff started experiencing pain in her right ankle in January 2004 after a death in her family and she was wearing dress shoes. (Id. at 93). She went to see Dr. Abbott on January 29, 2004 and he assessed her condition as acute tibialis posterior tendinitis/dysfunction. (Id.). She was prescribed Vioxx[2] and given a CAM walker (a walking boot that limits the movement of the ankle and foot). On February 2, 2004, plaintiff went to see Dr. Abbott for a follow-up visit. (Id. at 92). The pain in her right ankle continued and the CAM walker provided no real improvement. Dr. Abbot recommended an MRI and prescribed Darvocet to help alleviate the pain. (Id.). Plaintiff again saw Dr. Abbott on February 23, 2004 and stated she was still having pain in her right ankle, but admitted she was taking care of her sister which required her to be on her feet a lot. (Id.). The MRI confirmed Dr. Abbott's diagnosis of tibialis posterior tendinitis/dysfunction. (Id.). Plaintiff was given an injection in her right ankle. On March 2, 2004, Dr. Abbott noted no improvement in plaintiff's ankle. (Id.). He prescribed another

---

[2]Vioxx has since been removed from the market by the manufacturer.

injection along with physical therapy for six weeks and the continued use of the CAM walker. (Id.). When plaintiff returned to see Dr. Abbott on April 19, 2004, he recommended she stay off her foot and see Dr. Mendicino at the West Penn Foot and Ankle Institute for possible surgery on her ankle. (Id. at 91).

Plaintiff saw Dr. Mendicino on May 7, 2004 and he discussed plaintiff's options regarding her ankle. (Id. at 108). She opted to forgo further conservative procedures and proceed with surgery on her foot. (Id. at 108-09). On June 23, 2004, surgery was performed on plaintiff's right ankle. (Id. at 94-99). Dr. Mendicino reported plaintiff admitted she was doing very well at a follow-up visit on July 1, 2004, (id. at 105) and at her next follow-up visit on July 19, 2004, she had no complaints and x-rays "demonstrat[ed] good alignment." (Id. at 106). In subsequent follow-up visits in August, September, and October 2004, plaintiff continued to improve and was "doing fine" or "very well." (Id. at 102-04). On September 24, 2004, Dr. Mendicino discontinued plaintiff's use of the walker and recommended more physical therapy sessions. (Id. at 103). Plaintiff once again met with Dr. Mendicino on December 9, 2004, and complained of some pain in her heel and leg. (Id. at 101). Dr. Mendicino noted that there were "[n]o signs of complications [and there was a] complete healing of the osteotomy site." (Id.). Plaintiff was prescribed a Medrol Dosepak and Bextra to help with the pain. (Id.). The expectation was that Dr. Mendicino would take out the fixations, i.e., screws, in plaintiff's ankle in January 2005. (Id. at 111).

In September 2006, Dr. Abbott referred plaintiff to Dr. Anderson after she complained of pains in her right knee. (Id. at 188). On September 11, 2006, Dr. Anderson assessed plaintiff with right knee pain. (Id.). On the same day as her first visit, September 11, 2006, Dr. Anderson

4

completed a checklist form the "Medical Service Statement of Claimant's Ability to Perform Work Related Physical Activities," (the "Medical Source Form") on which he checked lines indicting that plaintiff could occasionally lift two - three pounds, she was capable of standing and walking for one hour or less, she could only sit for no more than two hours without having to get up and that she did not have the capability to crouch, stoop, kneel, bend, climb, or balance herself and she had limitations on her ability to reach, handle, finger, feel, see, hear and speak when she was in a sitting position. (Id. at 168-70). On September 12, 2006, Dr. Anderson referred plaintiff to Dr. Seldelmann to obtain an MRI on her right knee. (Id. at 189). A week later, on September 19, 2006, Dr. Anderson completed a Job Capabilities and Restrictions Evaluation Form (the "Evaluation Form"), which was a checklist on which he checked a line to indicate that plaintiff was only capable of performing less than sedentary work. (Id. at 166-67).

Dr. Anderson performed surgery on plaintiff's knee on September 26, 2006. A post-operative ("post-op") examination on October 6, 2006, revealed plaintiff to be doing well with a "good range of motion, minimal joint line tenderness, negative McMurray's, good quad strength. Femoral and peroneal nerves are intact without calf tenderness and good peripheral pulses." (Id. at 181). He also noted that plaintiff had "no specific complaints today." (Id.).

On her application for disability, plaintiff indicated that she experiences pain in her heel and all through her leg. (Id. at 62). She gets tired when she tries to scrub, sweep floors or walk in a grocery store. (Id.). The pain is especially bad when she gets up in the morning and when she goes to bed at night. (Id. at 63). The pain lasts throughout the whole day. (Id.) She takes an over-the-counter medication, Aleve, for pain, but the medication did not relieve the pain. (Id. at 63-64). She is only able to walk about fifty yards before becoming very tired. (Id. at 64). She

5

uses a cane which was prescribed by Dr. Anderson. (Id. at 203). She can sit for an hour at a time before having to move around. (Id. at 58).

At the hearing, plaintiff testified that she has not driven since the surgery on her right ankle in 2004 (id. at 205); she is not able to sleep well and has to take two to three naps during the day (id. at 206); her boy friend and daughter help her with household chores (id. at 209); and she is able to fold laundry after her boy friend brings it to her. (Id.). She also testified to previously using a cane and a walker after knee surgery on September 28, 2006 and that her boy friend and daughter had to do the housework for her. (Id. at 203-04, 209). Plaintiff also stated that she is not able to stand for long periods of time, and she has to use a shower chair, her sitting is limited to 30-minute intervals due to her foot and knee cramping and she has to spend most of the day lying back in her recliner with her feet elevated. She also stated her conditions have prevented her from enjoying past activities including dancing, swimming, playing with her grandchildren, and cleaning her house. (Id. at 206-13).

The VE also testified at the hearing. Considering the limitations of having to do sedentary work that did not require crawling, kneeling, climbing, balancing, or the use of foot controls, the VE reported that plaintiff would be able to work in the positions of packager (800 jobs in the regional area and 150,000 jobs nationally), office clerk (1,200 jobs regionally and 100,000 jobs nationally), and small machine operator (280 jobs regionally and 75,000 jobs nationally). (Id. at 216). All of these jobs would provide for a sit/stand option. (Id.). Upon further questioning by the ALJ, the VE noted that if an individual with plaintiff's conditions had to be absent two or three months a month on a continuous basis, or could not stay on task 10 to 15 percent of the day, or had to take frequent breaks for extended periods of time, the person

would be unable to perform any of the jobs listed above. (Id. at 216-17).

**IV.     Standard of Review**

The Congress of the United States provides for judicial review of the Commissioner's denial of a claimant's benefits. 42 U.S.C. § 405(g). This court must determine whether there is substantial evidence which supports the findings of the Commissioner. 42 U.S.C. § 405(g). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Ventura v. Shalala, 55 F. 3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389 (1971)). This deferential standard has been referred to as "less than a preponderance of evidence but more than a scintilla." Burns v. Burnhart, 312 F. 3d 113, 118 (3d Cir. 2002). This standard, however, does not permit the court to substitute its own conclusions for that of the fact-finder. Id.; Fargnoli v. Massonari, 247 F.3d 34, 38 (3d Cir. 2001) (reviewing whether the administrative law judge's findings "are supported by substantial evidence" regardless of whether the court would have differently decided the factual inquiry).

**V.     Discussion**

To qualify for SSI, the claimant must show "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A). Similarly, a person is unable to engage in substantial gainful activity when his or her physical or

mental impairment or impairments are of such severity that he or she is not only unable to do "his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §1382c(a)(3)(B). The Commissioner employs a five-step process to evaluate SSI claims. 20 C.F.R. §§ 404.1520; see Plummer v. Apfel, 186 F.3d 422 (3d Cir.1999). The Commissioner considers whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and (5) if not, whether he or she can perform other work. The claimant bears the burden of production and proof during the first four steps of the inquiry. If the plaintiff fails to meet the burden of proving the requirements in the first four steps, the administrative law judge may find that the plaintiff is not disabled. Burns, 312 F.3d at 119. The Commissioner is charged with the burden of proof with respect to the fifth step in the evaluation process and is required to prove that there are other jobs in the national economy that the plaintiff can perform. (Id.)

In the instant case, the ALJ found: (1) plaintiff has not engaged in substantial gainful activity since the alleged onset of disability on December 1, 2004; (2) plaintiff met the requirement of having severe impairments, specifically status post right knee arthroscopy and tibial tendon dysfunction of the right foot; (3) plaintiff's impairments did not meet any of the listings in Appendix 1, Subpart P, Regulation No. 4; (4) despite plaintiff not having any past relevant work, she has the RFC to perform sedentary work that does not require crawling, kneeling, balancing, climbing, or the use of foot controls and; (5) with these limitations, plaintiff would be able to perform in such occupations as an office clerk, a packager, and a small machine

8

operator. (R. at 16-18).

Plaintiff argues that the ALJ's decision is not supported by substantial evidence. Specifically, she contends that the ALJ failed to consider properly the medical evidence present in the record and did not provide sufficient explanation regarding the rejection of her testimony. Each of her arguments will be addressed.

A.     The ALJ's Evaluation of the Medical Evidence

Plaintiff argues that the ALJ "mischaracterize[d] and ignore[d] portions of the objective medical evidence that demonstrate the disabling severity of [plaintiff's] condition." (Plaintiff's Brief for Summary Judgment ("Pl.'s Br."), Docket No. 7, at 4). She asserts that the ALJ did not provide a sufficient explanation for his rejection of the opinion by Dr. Anderson, plaintiff's treating physician. To support her contention, plaintiff primarily cites to the Evaluation Form completed by Dr. Anderson on September 19, 2006, on which he checked a line stating that plaintiff was only capable of doing less than sedentary work. One week prior to the completion of the Evaluation Form, on September 11, 2006, Dr. Anderson completed a check list form, the Medical Source Form, on which he noted plaintiff's pain in her right knee and foot to support his checking lines to indicate a finding that she could occasionally lift two to three pounds, stand for an hour or less, and sit for less than two hours. (R. at 168-70). Dr. Anderson further checked lines that plaintiff was not capable of bending, kneeling, stooping, crouching, balancing, and climbing. (Id. at 169). He also checked lines that plaintiff's impairments affected her ability to reach, handle, finger, feel, see, hear, and speak when she was in a sitting position. (Id. at 170).

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment

9

based on a continuing observation of the patient's condition over a prolonged period of time.'" Plummer, 186 F.3d at 429 (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987)); see Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). The ALJ must weigh conflicting medical evidence in determining whom to credit, but "cannot reject evidence for no reason or for the wrong reason." Morales, 225 F.3d at 317. The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory, medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. (Id. 317-18).

A medical opinion, however, is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). In determining whether an opinion by a medical source should be entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

Plaintiff argues that the ALJ did not provide sufficient explanation for his rejection of Dr. Anderson's opinion. The ALJ explained that Dr. Anderson's opinion was rejected because it was not supported by the weight of the evidence in the administrative record. (R. at 15). As noted earlier, plaintiff had surgery on her right ankle in June 2004. She met with Dr. Mendicino a few times for post-op evaluations of her foot. Her first two post-op meetings with Dr. Mendicino on July 1, 2004 and July 19, 2004 showed that plaintiff was doing well with "little-to-

no discomfort." (Id. at 106). On August 19, 2004, plaintiff stated she was doing very well although she was experiencing a "little bit of soreness". (Id. at 104). On September 24, 2004, plaintiff's foot continued to do very well. Dr. Mendicino noted that there was no "real pain [and the] [x]-rays demonstrate[d] stability across the surgical site." (Id. 103). Plaintiff was placed on a regimen that would gradually discontinue her use of the walker although she would continue physical therapy. (Id.). On October 14, 2004, Dr. Mendicino reported that plaintiff was doing well and that she had "gradually increased her activity and [was] gradually improving. . . ." (Id. at 102). There were "[n]o signs of complications [and the] [x]-rays demonstrate osteotomy is stable and healed." (Id.) Dr. Mendicino recommended a gradual increasing of plaintiff's activities. When plaintiff saw Dr. Mendicino on December 9, 2004, she complained of some pain but he examined her foot and reported that there were "[n]o signs of complications [and there was a] [c]omplete healing of the osteotomy site." (R. at 101). Dr. Mendicino did note that there "some pain right where the fixation is and still there [was] some residual weakness status post surgery." (Id.). He recommended the possible removal of the fixation before allowing plaintiff to return to work. (Id.). There is no evidence that she received any further treatment for her right foot during the following months.

On September 11, 2006, after being referred by Dr. Abbott (who had been treating plaintiff for her right foot), plaintiff met with Dr. Anderson for the first time and complained about pain in her right knee and foot. (Id. at 188). It is at this point that Dr. Anderson completed the checklist Medical Source Form and one week later on September 19, 2006, he completed the Evaluation Form. At the time Dr. Anderson completed those forms, he did not have a longitudinal relationship with plaintiff. Both the Medical Source Form and the Evaluation Form

11

were check-off forms and little supporting information was furnished. An administrative law judge may give little weight to conclusory medical opinions such as those indicated by checking a box or filling in a blank. See Mason v. Shalala, 994 F.2d 1059, 1065 (3d Cir. 1993); Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985). At the conclusion of the hearing before ALJ, the ALJ specifically noted in the following colloquy the need for medical support for the conclusions checked on the Medical Source Form and the Evaluation Form:

> ALJ: As you're well aware, Exhibit 7F [the Medical Source Form and the Evaluation Form] is the physical capacity evaluation by the one physician and that shows substantial limitations but, of course, there has to be the additional evidence that would be the underpinnings for this opinion and that's what I'm expecting to receive. Is that correct?
>
> ATTY: That's correct, what I'm looking for, Your Honor. Yes.
>
> ALJ: Okay. All right. Anything else?
>
> ATTY: That'll take care of it.

(R. at 220). There, however, was no evidence in the record furnished after the hearing to provide the "underpinnings" sought by the ALJ.

Dr. Anderson performed surgery on plaintiff's right knee on September 28, 2006. (Id. at 183). A follow-up report by Dr. Anderson on October 6, 2006, stated plaintiff was doing well and there were "no specific complaints today. Mechanical symptoms were resolved . . . [and she had a] good range of motion, minimal joint line tenderness, negative McMurray's, [and] good quad strength." (Id. at 181). Clearly, the record does not support plaintiff's contention that her

12

limitations had lasted for a continuous period of at least twelve months; nor does the record support the limitations Dr. Anderson listed in the Medical Source Form or the Evaluation Form. The assessments that plaintiff primarily refers to in her argument as supporting the severity of her disability were made either before surgery for her right foot on June 2004 or before surgery for her right knee on September 28, 2006.³

      B.     <u>The ALJ's Evaluation of the Credibility of Plaintiff's Testimony</u>

Plaintiff also argues that the ALJ did not properly consider her testimony. Plaintiff testified about not driving since her foot surgery in 2004 and not sleeping well due to the pain in her foot and knee. She also testified to previously using a cane and a walker after knee surgery on September 28, 2006 and that her boy friend and daughter had to do the housework for her. Plaintiff also stated that she is not able to stand for long periods of time, her sitting is limited to 30-minute intervals due to her foot and knee cramping and she has to spend most of the day lying back in her recliner with her feet elevated. She also stated her conditions have prevented her from enjoying past activities including dancing, swimming, playing with her grandchildren, and cleaning her house.

The ALJ must give serious consideration to the claimant's subjective complaints, even

---

³Plaintiff cites to the following assessments: the January 1, 2004 report by Dr. Abbot, stating that plaintiff had significant discomfort in her right ankle, the April 19, 2004 report stating that plaintiff was experiencing a lot of discomfort and pain, the September 2006 report that included Dr. Anderson's Evaluation Form, the September 12, 2006 MRI report articulating the state of plaintiff's knee, and the September 19, 2006 follow-up report by Dr. Anderson showing there was a tear in plaintiff's knee. The post-op assessments plaintiff refers to include: (1) the December 9, 2004 report by Dr. Mendicino stating that the fixation in plaintiff's ankle might have to be removed before plaintiff's possible return to work and (2) the report made on the day of the knee surgery, September 28, 2006, which merely shows the state of plaintiff's knee before surgery.

when those assertions are not confirmed fully by objective medical evidence. See Mason v. Shalala, 994 F.2d 1058, 1067-68 (3d Cir.1993); Welch v. Heckler, 808 F.2d 264, 270 (3d Cir.1986). Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. Carter v. Railroad Retirement Board, 834 F.2d 62, 65 (3d Cir. 1987); Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981).

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. Smith, 637 F.2d at 972; Bittel v. Richardson, 441 F.2d 1193, 1195 (3d Cir. 1971). Where a claimant's testimony about pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain without contrary medical evidence. Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985); see Chrupcala v. Heckler, 829 F.2d 1269, 1275-76 (3d Cir. 1987); Akers v. Callahan, 997 F.Supp. 648, 658 (W.D.Pa. 1998).

Substantial evidence exists to support the ALJ's discrediting plaintiff's subjective complaints of pain. The ALJ explained that plaintiff's testimony about the extent of her impairments was discounted based upon the lack of objective medical evidence. As the ALJ found, plaintiff underwent surgery for her right foot and knee and the follow-up reports for both procedures reported plaintiff was doing well. (Id. at 15). The ALJ also noted that plaintiff did not have any complaints after her knee surgery. (Id.). The ALJ credited her testimony to the extent he found that plaintiff was able to perform sedentary work that does not require climbing, kneeling, crawling, balancing, or the use of foot controls and the vocational expert testified to the types of work plaintiff would be able to perform given her limitations. Based upon the record, there is substantial evidence to support the ALJ's decision.

14

## VI. Conclusion

The Court concludes that the ALJ finding that plaintiff was not disabled under the Social Security Act is supported by substantial evidence. The decision of the ALJ denying plaintiff's application for SSI is affirmed.

Plaintiff's motion for summary judgment (Docket No. 6) is **DENIED**, and defendant's motion for summary judgment (Docket No. 8) is **GRANTED**.

The clerk shall mark this case as closed.

By the court,

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

Dated: January17, 2008

cc: All Counsel of Record